745 So.2d 733 (1999)
Raphael and Brenda GUILLORY, PlaintiffsAppellants,
v.
INTERNATIONAL HARVESTER COMPANY, INC., Defendant Appellee.
No. 99-593.
Court of Appeal of Louisiana, Third Circuit.
October 13, 1999.
Writ Denied January 14, 2000.
*734 John Haas Weinstein, Opelousas, for Raphael and Brenda Guillory.
Michael M. Noonan, New Orleans, for International Harvester Co., et al.
Frederick Douglas Gatz Jr., Lafayette, for Society of the Roman Catholic Church.
BEFORE YELVERTON, WOODARD, and PICKETT, Judges.
YELVERTON, J.
Raphael Guillory was injured on October 26, 1995, while operating a 1987 Case IH 244 tractor cutting grass at St. Ann's Catholic Church in Mallet, Louisiana. He was employed as a maintenance worker by the Diocese of Lafayette. He testified that as he was making a left turn the brakes on the tractor stuck throwing him up from his seat. The tractor then hit a hole causing him to almost fall off. The resulting jerking back and forth in the hole caused injuries to his neck and back.
Raphael and his wife sued Case Corporation[1] as the manufacturer of the tractor. Other parties were also named but Case was the only remaining party by the time of trial in November 1998. The Guillories argued that Case was liable to them pursuant to La.R.S. 9:2800.56 because the tractor was unreasonably dangerous in design.
At the close of the Guillories' evidence, Case moved for an involuntary dismissal pursuant to La.Code Civ.P. art. 1672(B). Concluding that the Guillories had failed to prove their case, the trial court dismissed the suit with prejudice. The Guillories appeal the dismissal.

INVOLUNTARY DISMISSAL
The Guillories claim that the trial court erred in dismissing their case because they presented evidence of sufficient quality and quantity to prove all elements of their case by a preponderance of the evidence. Specifically, they claim that their expert, Dr. Richard Scott, was a qualified mechanical engineering expert. Through his testimony the Guillories claim that they proved that the tractor was defective, the defects existed when the tractor left Case's control, and the defects caused Raphael's injuries.
Article 1672(B) of the Louisiana Code of Civil Procedure, providing for involuntary dismissal, states:
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
*735 In Mayes v. State, 96-789, p. 4 (La.App. 3 Cir. 12/11/96); 685 So.2d 497, 500, writ denied, 97-0113 (La.3/7/97); 689 So.2d 1376 (citations omitted), this court explained the standard of review applicable to an involuntary dismissal as follows:
The trial court has much discretion in determining whether to grant a motion for involuntary dismissal. In making a determination on a motion for involuntary dismissal, the trial court is not required to review the evidence in the light most favorable to the plaintiff. The judge is only required to weigh and evaluate all of the evidence presented up to that point and grant a dismissal if the plaintiff has failed to establish his claim by a preponderance of the evidence. An involuntary dismissal authorized by La. Code Civ.P. art. 1672 should not be reversed in the absence of manifest error.
"Proof by a preponderance of the evidence means that, when taken as a whole, the evidence shows that the fact or cause sought to be proved is more probable than not." Darton v. Kroger Co., 30,771, p. 2 (La.App. 2 Cir. 8/25/98); 716 So.2d 974, 976. "Although petitioners are not entitled to any special inferences in their favor, absent circumstances in the record casting suspicion on the reliability of the testimony and sound reasons for its rejection, uncontroverted evidence should be taken as true to establish a fact for which it is offered." Ross v. Premier Imports, 96-2577, p. 5 (La.App. 1 Cir. 11/7/97); 704 So.2d 17, 20, writ denied, 97-3035 (La.2/13/98); 709 So.2d 750.
Pursuant to La.R.S. 9:2800.54(A), the manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous. The characteristic of the product that renders it unreasonably dangerous in design must exist at the time the product left the control of its manufacturer or result from a reasonably anticipated alteration or modification of the product. La.R.S. 9:2800.54(C).
In the case before us the Guillories argue that it was the braking system on the tractor that was defective and caused his injuries. Raphael testified, specifically, that when he began to make a left turn and used the left brake pedal to help make a sharper turn, the pin on the left brake pedal got stuck in the spring on the parking brake lever. This caused the brake to lock up. Their expert, Dr. Richard Scott, testified that he found the braking system of the tractor defective in two ways. First, the pin of the left brake pedal could catch on the coil spring attached to the parking brake lever. Second, the spring was so deformed it would not hold the parking brake lever up. If either of these two things transpired, the brakes would remain in the locked position surprising the driver and jolting him.
Although the trial court had not reviewed the medical evidence introduced into the record, the court was satisfied that the Guillories had proven that Raphael sustained some injuries. The trial court did not address the cause or the extent of Raphael's injuries because it found that the Guillories failed to produce sufficient evidence concerning the defect itself. The trial court also did not specifically address the admissibility of Dr. Scott's testimony which was admitted over the continuing objection of Case. The trial court did state that even if it decided Dr. Scott's testimony was totally admissible, the evidence introduced did not "rise to that level of quality of evidence that is sufficient to carry the burden of proof."
The first concern of the trial court with the Guillories' case was their failure to prove that the spring which trapped the pin of the left pedal was a Case spring or that the spring on the tractor, which was inspected over a year after the incident, was the same spring on the tractor when the accident happened. In other words, the trial court did not believe that this spring was in the condition it was at the time it left Case's control or that there was *736 a reasonably anticipated alteration of the product. Another concern the trial court had was the age of the tractor, eight years old at the time of the accident, and the number of hours on it, 1200 to 1500. The trial court explained that "[i]t raises tremendous numbers of questions as to whether or not this was a maintenance thing, whether or not it was a manufacturer problem."
Design defects are regulated by La.R.S. 9:2800.56 which provides:
A product is unreasonably dangerous in design if, at the time the product left its manufacturer's control:
(1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and
(2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product. An adequate warning about a product shall be considered in evaluating the likelihood of damage when the manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product.
After carefully reviewing the evidence presented by the Guillories in their case-in-chief, we conclude that the Guillories established a defect in the braking system of the tractor by a preponderance of the evidence. A review of the record and the evidence presented by the Guillories reveals that originality of the spring and the maintenance of the tractor were not issues. As admitted by the trial court, its concerns with the Guillories' evidence was based on questions posed by defense counsel during oral argument in support of the motion for involuntary dismissal. There is no evidence or basis in the record supporting these arguments. See Thomas v. Connolly, 31,447 (La.App. 2 Cir. 1/20/99); 726 So.2d 1052, which observed the rule that facts referred to solely in the arguments of counsel are not considered record evidence.
All of the record evidence introduced by the Guillories supported their claim that the braking system of the tractor was defective pursuant to La.R.S. 9:2800.56. The only evidence introduced on the subject was that the pin became trapped in the spring. In addition to expressing the opinion that the braking system was defective, Dr. Scott offered two relatively simple possible alternative designs for the product that he opined would prevent the pin from becoming trapped in the spring. He testified that, instead of a torsion spring, a coil spring could have been used that would not have allowed the ensnarement of the pin. He also stated that the spring on the parking brake lever could have been covered up so that it was not exposed.
The originality of the spring was never an issue. There was no testimony that the spring at issue was not the spring that came with the tractor or was not a proper spring that may have been replaced. Dr. Scott did admit that when he examined the spring on the tractor, it was deformed. However, he explained that the deformity could have been caused by the pin on the left brake pedal getting caught in the spring and pulling on it as it was released. It could have also been caused by the accident itself. Raphael testified that he and his brother went back to the tractor on a later day and hit it a couple of times to get the pin to release. Dr. Scott further testified that Case should have anticipated that a spring that is several years old could fail and cause this problem, given the proximity of the spring to the pin of the left brake pedal.
There was also no basis to conclude that the tractor was not maintained properly. Raphael testified that he helped purchase the tractor in 1987 and has been the main operator since that time. He also testified that there had been no previous problems with the brakes prior to this incident. Raphael stated that he read the owner's manual in 1987 when he bought the tractor and *737 that he greased the whole tractor before cutting the grass on the day of the incident.
We recognize that the Guillories' evidence was not perfect. For example, Raphael admitted that exemplar spring admitted into evidence did not look exactly like the spring on the tractor in the pictures. However, as mentioned earlier, the spring on the tractor was deformed by the time the pictures were taken. Father Andrew John, the priest that Raphael reported to at the time of the incident, testified by deposition that the tractor was operated after the incident on many occasions with no problems, including Raphael himself operating the tractor for a time when he went back to work. Raphael denied that he operated the tractor after the incident. Also, it is possible that the brakes locked up only the one time, when Raphael was injured. There was also testimony that the action of the pin becoming trapped in the spring was repeated on later occasions with Dr. Scott producing the action himself.
The trial court's ruling was specifically based on the evidence concerning the originality of the spring and possible maintenance problems. There was simply no evidence in the record controverting the plaintiffs' evidence regarding these matters. If there are defenses to this evidence, then those can be established by Case in the presentation of its evidence. We can only speculate at this point what Case may offer in defense of the evidence offered by the Guillories.
We conclude that the Guillories presented sufficient evidence establishing that the Case 244 tractor was unreasonably dangerous in design. Accordingly, we reverse the trial court's involuntary dismissal of the Guillories' case. We remand the case for further proceedings. Case Corporation is assessed with costs of this appeal.
REVERSED AND REMANDED.
NOTES
[1] International Harvester Company was incorrectly identified as the manufacturer of the tractor in the petition.